CLARA GARCÍA COLÓN, Plaintiff and Appellee, *v.* SECRETARY OF THE TREASURY ET AL., Defendants and Appellants.

No. R-70-210.     Decided March 19, 1971.

758

*Gilberto Gierbolini, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellants. The appellee did not appear.

MR. JUSTICE RIGAU delivered the opinion of the Court.

On January 10, 1969, Clara García Colón, of age, widow, lottery agent, and resident of San Lorenzo, Puerto Rico, filed a sworn statement in the Superior Court, where she stated that she had lost the lottery ticket No. 43,782 which she had for the drawing of January 8 of that year; that the same had won a prize of $960; and that the Bureau of the Lottery required her to submit a court order in order to stop payment of said ticket, reason for which she requested from the court to issue said order in order to satisfy in that way the requirement demanded from her. On that same date, January 10, the Superior Court, after seeing the mentioned petition, granted it and issued the order requested.

The Bureau of the Lottery having been consulted by plaintiff on February 18, 1969, the Director of said Bureau, answered as follows through his letter of March 3 of that same year.

"As you know, the lottery tickets are payable to bearer. We cannot pay unless the client presents the fractions for payment. However, payments have been made without the ticket, but only when there is an order from a competent court. The common procedure is to file an ordinary civil action where the party losing the fraction appears as plaintiff, and the Bureau of the Lottery and the Department of the Treasury appear as defendants."

Subsequently after the Director of the Bureau of the Lottery and the Secretary of the Treasury refused to pay the prize to plaintiff, the latter filed a complaint in the Superior Court on May 28, 1969, against said Director and against the Secretary of the Treasury requesting the payment of the prize.

On July 1, 1969, the Secretary of Justice appeared through a motion for an extension and after stating that he had been served with a copy of the complaint and that he was undertaking to obtain from the pertinent agency, the information necessary to answer it, he requested a thirty-day extension to answer. The court granted said extension and an additional one on August 5, 1969. On September 4, 1969, the Secretary of Justice filed a motion for dismissal alleging that the court had not obtained jurisdiction over defendant and that the complaint did not state facts constituting a cause of action. After several incidents which we need not tell in detail, the Superior Court, on April 22, 1970, issued an order which copied verbatim reads as follows:

"Plaintiff in this case alleged under oath that she is an agent of the Lottery of Puerto Rico and that she lost lottery ticket No. 43,782 of the drawing of January 8, 1969. Likewise she alleged, that said ticket won a prize of $960 and it has not been paid.

"It issues from the record that plaintiff obtained an order from the Court to stop the payment of said winning lottery ticket.

"A hearing having been held to that effect and an answer having been presented by the Secretary of the Treasury, plaintiff duly established what she set forth in her sworn statement. Defendant accepted that as far as he knows the payment of the above-mentioned prize has not been made. It was stated that the

administrative policy in these cases is to make the payment and if afterwards it appears that it has been paid, the petitioner would return the amount.

"Considering that plaintiff is a Lottery agent and that therefore there is no grounded reason to believe that the Secretary of the Treasury may be prejudiced, if the prize is paid to another person, this Court orders the Secretary of the Treasury and/or the Director of the Lottery of Puerto Rico to pay the prize which the lottery ticket No. 43,782 Serial B won for $960 in the drawing of January 8, 1969, to plaintiff herein Mrs. Clara García Colón.

"The payment shall not create any legal impediment for defendant to recover the amount paid if it appears that he has paid said prize to another person, prior to this Order."

On May 4, 1970, the Secretary of Justice wrote the following to the Clerk of the Superior Court:

"We have received a copy of the judgment rendered in the above-entitled case where the Commonwealth of Puerto Rico is ordered to pay $960 to plaintiff.

"In order that the Department of the Treasury may proceed to make the payment of the judgment it is necessary that you send us a certified copy of the same. According to the law, said copy is free of any charge."

On May 6 of that year the Secretary of Justice filed a motion for reconsideration to be effective *nunc pro tunc* requesting the court to amend the third paragraph of its aforementioned order of April 22, 1970, so that said order instead of stating that "the administrative policy in these cases is to make the payment and if afterwards it appears that it has been paid, the petitioner would return the amount," it would state that the administrative policy is "to make a liquidation of the winning lottery tickets and if afterwards it appears that the winning lottery ticket claimed is not paid, then the agency pays the claimant." The court through its amended order of June 5, 1970, granted the amendment requested by the Department of Justice and

ordered the Secretary of the Treasury and the Bureau of the Lottery to pay the prize of $960 to plaintiff.

After all those proceedings and appearances defendant appeals to this Court through a petition for review and asks us to dismiss the action for want of jurisdiction. He assigns two errors. The first consists in arguing that the trial court erred in assuming jurisdiction since the Commonwealth was not sued, and the second in that the Secretary of Justice was not summoned.

■ In the light of the foregoing recital both assignments are frivolous. While it is true that the complaint was filed against the Secretary of the Treasury and against the Director of the Bureau of the Lottery and not against the Commonwealth, the undeniable truth is that for the purpose of operating the lottery and of paying the prizes of the same the Director of the Lottery and the Secretary of the Treasury are agents of the State. To claim the contrary would be an incredible sophism. The State, like a corporation, is a juridical figure composed of persons, properties, rights, and duties, but of necessity it must act, and it acts through persons who are its agents. The State collects taxes, makes public works, watches for the public health, etc., but it is done through the Secretaries of the Treasury, of Public Works, of Health, etc. Nobody has seen the State mixing concrete or vaccinating somebody. That is done by its agents. The lottery of Puerto Rico is operated by the Bureau of the Lottery, Bureau created by law in the Department of the Treasury. Act No. 465 of May 15, 1947, § 1; 15 L.P.R.A. § 111.

■ The second assignment also lacks merit, for as we have seen, since the beginning of this action the Secretary of Justice was aware of the same and took active part in handling the case in the trial court. He requested an amendment to the order of the court which disposed of the case, requesting a clarification in regard to the administrative

policy of the Bureau of the Lottery in cases of lost and unpaid lottery tickets. He even requested a certified copy of the judgment from the trial court "in order that the Department of the Treasury may proceed to make the payment" of the same.

■ Defendant cites the case of *Terceiro* v. *Homestead Division*, 53 P.R.R. 570 (1938). Said case is different from the case at bar. There, in the very words of the court, "the only substantial question involved in this case" was "Did the lower court err in disclaiming jurisdiction because an action against the People of Puerto Rico was involved *and the latter had not given its consent to be sued?*" (Italics ours.) The fact that the State has already given its consent to be sued is an essential and indispensable part of the case at bar.

But even though said case were identical with the case at bar—and it is not—we cannot permit the dead hand of the past to rule today's living right. As it is known, precedents are good to assist in the organized development of the law, but they should not and cannot stop said development. The law has changed very much since that case of Terceiro was written for a little more than a generation. The recent literature on that particular is very rich and well-known. That subject has been considered by practically all contemporary jurists of Europe and America. As it was expected, the vigorous previous European production of the last part of the 19th century and the beginning of the 20th, of the jurists who reacted against the legal fetishism and rigorous conceptualism exercised valuable influence on that literature giving way to sociological and teleological factors in the scientific elaboration of the law. Among others the following names may be recalled: Geny, Hauriou, Stammler, Saleilles, Ehrlich, Ihering and Heck. Among the recent literature to which we referred we can mention, among others, the following works: Allen, Law in the Making, 7th ed. (1964); Bodenheimer, Jurisprudence (1962); Castán, *La Formulación Judicial del*

*Derecho*, 2d ed. (1954); Friedmann, Legal Theory, 5th ed. (1967); Friedmann, Law in a Changing Society (1959); Hernández Gil, Antonio, *Metodología del Derecho*, Madrid (1945); Lloyd, Introduction to Jurisprudence, rev. ed. (1965); Paton, A Text-Book of Jurisprudence, 2d ed. (1951); Pound, Law Finding Through Experience and Reason (1960); Pound, The Spirit of the Common Law, Beacon Press (1966 ed.); Stone, Julius, The Province and Function of Law (1946).

From our jurisdiction see the cases of *Piovanetti Doumont* v. *Martínez, ante*, p. 644; *Silva* v. *Industrial Commission*, 91 P.R.R. 865 (1965); *Pérez* v. *Bauzá*, 83 P.R.R. 213, 218 (1961); *Millán* v. *Caribe Motors*, 83 P.R.R. 474, 488–489 (1961).

■ Besides the foregoing, it was the State itself, through the Director of the Bureau of the Lottery, who told plaintiff that "The common procedure is to file an ordinary civil action where the party losing the fraction appears as plaintiff, and the Bureau of the Lottery, and the Department of the Treasury appear as defendants." Defendant is precluded from proceeding against his own acts. This principle, based also on ethical and equitable grounds, permeates all the law. *Silva* v. *Industrial Commission*, 91 P.R.R. 865, 878 (1965). As pointed out by Puig Brutau, "one who has given occasion for a deceitful situation . . . cannot make his right prevail over that of one who has confided in such appearance."[1]

As we have set forth before—*Silva* v. *Industrial Commission, supra*, p. 873—in our law, of deep Continental European roots, the civil law and equity did not bifurcate into two different streams as it happened, for historical reasons, with the English common law, instead both ingredients have remained together, as it was from its origin, in the same stream of development. As we stated there, "equity is the yeast which

---

[1] *Estudios de Derecho Comparado* 103 (1951).

promotes the development of the civil law within itself, without being a separate branch or jurisdiction."[2]

Besides, the very law which authorizes the actions against the State provides that the same shall not affect actions "covered by specific legislation" which actions shall continue to be conducted under the laws applicable. Act No. 104 of June 29, 1955, § 4; 32 L.P.R.A. § 3079. The Lottery Act provides for the cases concerning lost lottery tickets and to that effect it states:

"If after the term of the six (6) months granted in section 122 of this title for the collection of winning tickets, there should still remain unpaid tickets or fractions thereof to which the aforementioned sworn declaration refers, the Director of the Bureau of the Lottery shall proceed to make the payment of the corresponding prize to the person who appears signing the sworn declaration."—15 L.P.R.A. § 120, last paragraph.

■ This case of $960 should have never reached this Court, and neither should it have taken the valuable time of the parties and the Court, which it took them, as a result of this appeal for review. The legal advice, principally in public agencies, should always be vigorously directed to do justice and resources of a mere legalistic nature should not be used to thwart it. As Castán points out, "if we are not to move within a sterile conception of pure standardization, the concepts of justice and equity are essential and cosubstantial to the notion of Law, which would fail to accomplish its moral and social purpose if it did not aspire to do justice, not an abstract and theoretical justice, but realistic and humane justice in accordance with the circumstances of each case."[3]

---

[2] For a summarized discussion of that proposition see *Silva* v. *Industrial Commission, supra* at pp. 872–879. For an excellent and broader discussion see, Castán, *La Formulación Judicial del Derecho* 26 *et seq.*, 2d ed. (1954). Also, Allen, Law in the Making, Ch. V, 6th ed. (1958), and Friedmann, Legal Theory 543, 5th ed. (1967); 4th ed., p. 493.

[3] *La Formulación Judicial del Derecho* 87, 2d ed. (1954).

And from that same author we copy the following:

"[t]he use of equity in the administration of justice is an irreplaceable exigency. Not in vain is equity the proper criterion of justice achieved in its highest perfection, taking into account the moral and human sense which the positive Law should have and the need to adopt its rules to the circumstances of the concrete cases."[4]

The second error assigned was not committed either.

The amended judgment rendered in this case by the Superior Court, Caguas Part, on June 5, 1970, will be affirmed.

Mr. Acting Chief Justice Pérez Pimentel and Mr. Justice Dávila concur in the result without opinion.